876 F.2d 59
 1989-1 Trade Cases 68,603
 H.J., INC., a Minnesota corporation, d/b/a Anderson Dairy
Supply, Appellee and Cross-Appellant,
v.
INTERNATIONAL TELEPHONE & TELEGRAPH CORP., and Flygt
Corporation, a Subsidiary of ITT, Appellants and
Cross-Appellees.
 Nos. 86-5347 MN, 86-5348 MN.
 United States Court of Appeals,
Eighth Circuit.
 May 26, 1989.
 
 Before McMILLIAN and JOHN R. GIBSON, Circuit Judges, and FAIRCHILD*, Senior Circuit Judge.
 ON PETITION FOR REHEARING
 PER CURIAM.
 
 
 1
 We need address only one of H.J.'s several arguments.[1]
 
 
 2
 Damages for Attempted Monopolization of the Hoist Market
 
 
 3
 We decided that although the record would not sustain antitrust liability of Flygt with respect to pumps, there was evidence to support the jury's finding that Flygt attempted to monopolize the hoist market and engaged in predatory pricing to accomplish this purpose. 867 F.2d 1531, 1540-43 (8th Cir.1989). The verdict, however, contained no separate award of damages for the attempt to monopolize. Question 12 inquired "What was the present value of lost net profits, if any, plaintiff would have realized but for the alleged antitrust violation?" Because the jury had found antitrust violations with respect to pumps and hoists, this answer, based on plaintiff's Exhibit 108c, included lost profits on both pumps and hoists. Question 22 inquired as to the amount of damages caused by Flygt's unjustified interference with H.J.'s existing or prospective business advantage. Under the facts of this case that figure should be the same as damages for attempted monopolization by predatory pricing of hoists. The jury's answer could not be sustained, however, because the jury used the figure for lost profit on pumps as well as hoists, disregarding H.J.'s counsel's request in final argument for the lost-profits-on-hoists figure. Remand for a new trial on damages for attempted monopoly would accordingly be necessary except that the record (H.J.'s Exhibit 108) supported $105,744 as a reasonable (and unchallenged) approximation of the 1986 value of lost profits for projected hoist sales. Id. at 1550. This was the amount requested by H.J.'s counsel as an answer to Question 22.
 
 
 4
 H.J. now asserts that we must add $133,341.98 to the $105,744. The figure to be added is said to represent H.J.'s "operating losses incurred after its termination in attempting to survive the predatory conduct of defendant." There is testimony of an "operating loss through 12/31/82" of $104,511, and "a few additional going-out-of-business expenses, which were mostly interest and things like that. It was $28,831."
 
 
 5
 H.J. did attempt to stay in business for some months after its pump distributorship was terminated, endeavoring to find other pumps it could sell, as well as to sell hoists. How much of its loss could reasonably be attributed to the loss of its pump distributorship, for which Flygt is not liable, and how much to the predatory pricing of hoists, could not be determined by us as a matter of law. Moreover, the jury was not asked to consider this amount of loss as part of antitrust damages.
 
 
 6
 It seems clear that up to now H.J. has been satisfied to have its antitrust damages measured by its lost profits for projected sales.
 
 
 7
 The agreed wording of Question 12 of the verdict called for "the present value of lost net profits." The answer was based on H.J.'s Exhibit 108c.
 
 
 8
 Although the wording of Question 22 called for "damages," the figure requested by H.J.'s counsel was taken from H.J.'s Exhibit 108, its calculation of lost projected net profits from sales of hoists nationwide. H.J. apparently did not ask the trial court to include the loss it now relies on as additional antitrust damages.
 
 
 9
 In its brief on appeal, H.J. defended the use of lost profits as a measure of damages, apparently in answer to Flygt's argument that antitrust damages should have been limited to the value of H.J.'s business on January 31, 1982, a figure the jury was also asked to find. In H.J.'s cross-appeal, it sought judgment on the total of damages on state law claims (which was larger than the trebled antitrust award), but did not argue that its antitrust awards should have been greater.
 
 
 10
 We think the argument that 1982 operating losses and going-out-of-business costs must be added to lost profits on projected sales comes too late.
 
 
 11
 The petition for rehearing is DENIED.
 
 
 12
 ORDER DENYING PETITION FOR REHEARING AND SUGGESTION FOR
 
 REHEARING EN BANC
 
 13
 Appellee/cross-appellant's suggestion for rehearing en banc has been considered by the court and is denied by reason of the lack of a majority of the active judges voting to rehear the case en banc.
 
 
 14
 MAGILL, Circuit Judge, recused himself in this matter.
 
 
 
 *
 The Honorable Thomas E. Fairchild, Senior United States Circuit Judge for the United States Court of Appeals for the Seventh Circuit sitting by designation
 
 
 [1]
 H.J. does point out additionally that our opinion refers to the line of manure pumps H.J. originally carried as "Hedlund" rather than "King." 867 F.2d at 1535. The record is also unclear whether H.J. carried Ralco pumps, as the opinion states, id., at 1536, or just other Ralco equipment. Although we acknowledge these inaccuracies, they make no difference in the result